No. 68,754

STATE OF KANSAS, *Appellee*, v. ACE CRAWFORD, *Appellant*.

(872 P.2d 293)

 Opinion
filed April 15, 1994. 

*Jean K. Gilles Phillips,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Jerome A. Gorman,* assistant district attorney, argued the cause, and *Nick A. Tomasic,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Ace Crawford appeals his jury trial convictions of four counts of aggravated robbery (K.S.A. 21-3427); seven counts of kidnapping (K.S.A. 21-3420); one count of aggravated burglary (K.S.A. 21-3716); one count of burglary (K.S.A. 1990 Supp. 21-3715); and one count of felony theft (K.S.A. 21-3701).

The charges arose from two incidents. The first incident occurred on the morning of February 9, 1991. On that date, Tim Herndon, his wife Barbara, and their three sons, Brandon, 7, Joel, 4, and Kyle, 2, went to the Ranch Bowling Alley in Kansas City where Brandon and Joel played in a junior league bowling program. When the bowling was over, the family went to the parking lot, where they entered their van. A man who had concealed himself in the van put a gun to Brandon's head and demanded the Herndons' cash, jewelry, and watches. He forced the family to lie down in the back of the van. The robber drove to a parking lot in Kansas City, Missouri. He told the Herndons to count to 100 after he left before doing anything. The robber then left the scene. Barbara and Brandon identified the defendant as the robber from a photographic lineup.

The second incident occurred during the early morning hours of February 15, 1991. Two men, Richard Wuckowitsch and Jeff Higbee, were working as night auditors in the Best Western Motel. A man entered and, at gunpoint, forced them to get down on their hands and knees with their faces close to the floor. The man asked where the motel safe was and was advised the motel used safety deposit boxes located in the lobby. The robber made them crawl to the boxes. The robber opened two of the boxes and took the money therefrom. He also took money from the

motel's register drawer. The robber took Higbee's car keys and forced the men into the motel's boiler room. The robber told them to stay there for a count of 1,000 and left the scene in Higbee's automobile. On February 19, 1991, each man identified defendant as the robber from a photographic lineup.

For his first issue, defendant contends the trial court committed reversible error in not striking venireperson Ralph Hollomon for cause. During voir dire, Hollomon disclosed that he had a son-in-law who was a policeman. During defense counsel's questioning of the potential jurors, the following occurred:

"MR. HUFFMAN [defense counsel]: Based on some of the conversation that Mr. Gorman told you this, we anticipate that there will be a series of law enforcement officers called to testify in this case. And it's my understand[ing] that at least—I believe this man here (indicating), there's one person in this room who has a relative that's a police officer.

"Just because these are police officers testifying, is there anyone in this room who would give those witnesses more weight as opposed to someone else like you or me who happened to be testifying, or could you take those police officers and treat their testimony and the evidence that they bring forth at this trial the same as you would any other evidence?

"VENIREMAN HOLLOMON: I would take a police officer's word over anyone's. I think I would have to say that.

"MR. HUFFMAN: If there were two people testifying, a police officer and an individual, you would believe the police officer more than the individual?

"VENIREMAN HOLLOMON: Yes, I would. I'm sorry.

"MR. HUFFMAN: I appreciate your honesty.

"VENIREMAN HOLLOMON: But I don't have any reason for believing otherwise.

"MR. HUFFMAN: I ask that this man be stricken for cause.

"THE COURT: And the grounds?

"MR. HUFFMAN: He doesn't believe he can fairly weigh the evidence.

. . . .

"MR. HUFFMAN: You're Mr. Hollomon?

"VENIREMAN HOLLOMON: Yes.

"MR. HUFFMAN: Based on Mr. Hollomon's testimony I would ask that he be stricken for cause, Your Honor. He's indicated that he can't at least give the evidence its weight. He's got a predisposition to believe police officers more so than other people who testify.

"THE COURT: I'm not sure if I heard him say quite that way. What I heard him say is he thinks that a police officer, just by being a police officer, that he believes what he would say.

"VENIREMAN HOLLOMON: That's what I said.

"THE COURT: I don't believe that's—

"VENIREMAN HOLLOMON: I would have to believe him over the other because the guy is sworn to duty and surely—that's the way I feel about it.

"THE COURT: That's fine. I appreciate your honesty."

The trial court did not excuse Hollomon for cause. The defense struck Hollomon through the use of one of its eight peremptory challenges.

In *State v. Dixon,* 248 Kan. 776, 811 P.2d 1153 (1991), defendant contended that the trial court's denial of his challenges for cause of three prospective jurors denied him his constitutional right to trial by an impartial jury. One of the three (Slaymaker) was removed by the exercise of a peremptory challenge. The other two sat on the jury. In discussing the issue relative to Slaymaker, we stated:

"K.S.A. 22-3410 sets forth specific grounds upon which a party may challenge a prospective juror. Dixon relies upon K.S.A. 22-3410(2), which provides:

'A juror may be challenged for cause on any of the following grounds:

. . . .

'(i) His state of mind with reference to the case or any of the parties is such that the court determines there is doubt that he can act impartially and without prejudice to the substantial rights of any party.'

"Challenges for cause are tried to the district court and decided in its discretion. *State v. Case,* 228 Kan. 733, 737, 620 P.2d 821 (1980). We have consistently held that the trial court is in a better position than this court to view the demeanor of prospective jurors as they are questioned. *State v. Mahkuk,* 220 Kan. 74, 76, 551 P.2d 869 (1976); *State v. Carpenter,* 215 Kan. 573, 577, 527 P.2d 1333 (1974). Thus, the trial court's ruling on a challenge for cause will not be disturbed unless it is clearly erroneous or an abuse of discretion is shown. *State v. Sanders,* 223 Kan. 273, 274, 574 P.2d 559 (1977).

"Dixon first contends the trial court abused its discretion in refusing to sustain a challenge for cause of Ms. Slaymaker. Ms. Slaymaker stated she might have trouble being impartial in light of evidence of a prior similar crime. Ms. Slaymaker also stated during voir dire that she might give more credibility to the children's testimony when compared to the defendant's.

"Dixon's argument of abuse has no merit. Ms. Slaymaker was removed from the venire panel by peremptory challenge and did not serve as a juror. When a prospective juror is removed from the jury panel by peremptory challenge, her qualifications are no longer a controlling factor, and where the defendant is not prejudiced the trial court's denial of a challenge of that juror for cause is not a ground for reversal. *State v. Sagebiel,* 206 Kan. 482, 484, 480 P.2d 44 (1971)." 248 Kan. at 788-89.

It is difficult to understand why the trial court did not excuse Hollomon for cause, but such refusal does not constitute a ground for reversal unless defendant was prejudiced by such denial.

Was defendant prejudiced by the trial court's refusal to excuse Hollomon for cause? We believe not.

In *Ross v. Oklahoma,* 487 U.S. 81, 101 L. Ed. 2d 80, 108 S. Ct. 2273, *reh. denied* 487 U.S. 1250 (1988), a prospective juror, Darrell Huling, indicated during voir dire that he could vote to recommend a life sentence, as opposed to the death penalty, if the circumstances were appropriate. On further examination by defense counsel, Huling stated that, if the jury found the defendant guilty, he would vote to impose death automatically. Defense counsel moved to have Huling removed for cause. The trial court denied the motion. Defense counsel used a peremptory challenge to remove Huling. 487 U.S. at 83-84.

The United States Supreme Court granted *certiorari* to consider, *inter alia,* the Sixth Amendment implications of the trial court's failure to remove Huling for cause and petitioner's subsequent use of a peremptory challenge to strike Huling. 487 U.S. at 85.

Rejecting the argument that defendant's Sixth Amendment right to an impartial jury was violated, the Supreme Court reasoned:

"Had Huling sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court's failure to remove Huling for cause, the sentence would have to be overturned. *Adams,* [*v. Texas,* 448 U.S. 38, 45, 65 L. Ed. 2d 581, 100 S. Ct. 2521 (1980)]. But Huling did not sit. Petitioner exercised a peremptory challenge to remove him, and Huling was thereby removed from the jury as effectively as if the trial court had excused him for cause.

"Any claim that the jury was not impartial, therefore, must focus not on Huling, but on the jurors who ultimately sat. None of those 12 jurors, however, was challenged for cause by petitioner, and he has never suggested that any of the 12 was not impartial. . . . We conclude that petitioner has failed to establish that the jury was not impartial." 487 U.S. at 85-86.

Acknowledging the trial court's error in failing to strike Huling for cause, the Supreme Court continued:

"Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error. But we reject the notion that the loss of a peremptory

challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. *Gray [v. Mississippi,* 481 U.S. 648], 663[, 95 L. Ed. 2d 622, 107 S. Ct. 2045 (1987)]; *Swain v. Alabama,* 380 U.S. 202, 219[, 13 L. Ed. 2d 759, 85 S. Ct. 824] (1965); *Stilson v. United States,* 250 U.S. 583, 586[, 63 L. Ed. 1154, 40 S. Ct. 28] (1919). They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. See *Hopt v. Utah,* 120 U.S. 430, 436[, 30 L. Ed. 708, 7 S. Ct. 614] (1887); *Spies v. Illinois,* 123 U.S. 131[, 31 L. Ed. 80, 8 S. Ct. 21 (1887). We conclude that no violation of petitioner's right to an impartial jury occurred." 487 U.S. at 88.

The Court continued:

"Although the trial court erred in failing to dismiss prospective juror Huling for cause, the error did not deprive petitioner of an impartial jury or of any interest provided by the State. '[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one.' *Delaware v. Van Arsdall,* 475 U.S. 673, 681[, 89 L. Ed. 2d 674, 106 S. Ct. 1431] (1986)." 487 U.S. at 91.

Defendant first contends that he was prejudiced because he was required to use one of his peremptory challenges on Hollomon. Had he not been so required, he would have been able to remove Ray Asher from the jury. The voir dire of Asher revealed the following:

"MR. GORMAN: Roy Asher, are you married, sir?
"VENIREMAN ASHER: Yes, sir.
"MR. GORMAN: Any children?
"VENIREMAN ASHER: Four.
"MR. GORMAN: And are you employed?
"VENIREMAN ASHER: Yes, Associated Wholesale Grocers, 25 years.
"MR. GORMAN: What type of work do you do for them?
"VENIREMAN ASHER: Warehouseman.
"MR. GORMAN: Is your wife employed, sir?
"VENIREMAN ASHER: Brinkmann Lighting.
"MR. GORMAN: What type of work does she do there?
"VENIREMAN ASHER: She's in quality control.
"MR. GORMAN: How long has she worked there, sir?
"VENIREMAN ASHER: About ten years.
"MR. GORMAN: Thank you."

Both counsel passed Asher for cause. No complaint was made as to Asher until the motion for new trial. There is no claim that

Asher was impartial or otherwise disqualified from serving on the jury. Whatever defense counsel's concern over Asher may have been, it could not have arisen from the innocuous answers Asher gave during the voir dire. Additionally, defendant contends the erroneous refusal of the trial court to remove Hollomon for cause prejudiced him, generally, by having the effect of permitting the State one more peremptory challenge than the defense had, as the defense was required to use one of its eight to correct the trial court's error.

An accused is entitled to a fair trial, not a perfect one. *State v. Chandler*, 252 Kan. 797, Syl. ¶ 3, 850 P.2d 803 (1993). As held in *Ross v. Oklahoma*, 487 U.S. 81, 88, peremptory challenges are a means to achieve the end of an impartial jury and, so long as the jury that sits is impartial, the fact the defense had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. We find no reversible error in this issue.

For his second issue, the defendant contends the trial court's denial of his motion to sever constitutes an abuse of judicial discretion.

K.S.A. 22-3202(1) provides:

"Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Pursuant to K.S.A. 22-3202(1), charges may be joined if (1) the crimes are the same or similar in character, (2) are based on the same transaction, or (3) constitute parts of a common scheme.

When all of the offenses are of the same general character, require the same mode of trial and the same kind of evidence, and occur in the same jurisdiction, the defendant may be tried upon several counts of one information or if separate informations have been filed they may be consolidated for trial at one and the same trial. *State v. Ralls*, 213 Kan. 249, 256-57, 515 P.2d 1205 (1973).

We recently reviewed the rules concerning trying separate charges in a single trial in *State v. Cromwell*, 253 Kan. 495, 511, 856 P.2d 1299 (1993), where we held:

"Whether a defendant will be tried on all separate charges in a single trial is a matter within the discretion of the trial court, and its decision will not be disturbed on appeal unless there is a clear showing of abuse of discretion. *State v. Woods*, 250 Kan. 109, 116, 825 P.2d 514, cert. *denied* 121 L. Ed. 2d 100 (1992); *State v. Adams*, 218 Kan. 495, 506, 545 P.2d 1134 (1976). If reasonable people could differ about the propriety of the trial court's decision, this court will not find that the trial court abused its discretion. *Woods*, 250 Kan. at 117."

Even if a trial court's consolidation decision is determined to be an abuse of discretion, the defendant has the burden of showing prejudice requiring reversal. *State v. Walker*, 244 Kan. 275, 278, 768 P.2d 290 (1989).

As is usual on a severance issue, the prosecution points to similarities between the two incidents giving rise to the charges and defendant points out dissimilarities.

The jury was instructed:

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime charged must be stated in a verdict form signed by the presiding juror."

We conclude the charges arising from the two incidents are of sufficiently similar character to overcome defendant's claim that the trial court abused its discretion in denying his motion to sever.

For his final issue, defendant contends the court's instruction on the burden of proof was clearly erroneous. K.S.A. 21-3109 provides that when there is a reasonable doubt, a defendant "must" be acquitted. The court instructed the jury that if the jury had a reasonable doubt as to any of the claims made by the State, it "should" acquit the defendant. The defense did not object to the giving of this instruction.

In *State v. Deavers*, 252 Kan. 149, Syl. ¶ 4, 843 P.2d 695 (1992), we held:

"No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating

distinctly the matter to which he or she objects and the grounds of the objection unless the instruction is clearly erroneous. K.S.A. 22-3414(3). An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there is a real possibility the jury would have returned a different verdict."

This exact issue was raised in *State v. Whitaker*, No. 69,392 (this day decided). In *Whitaker*, we held:

"Although K.S.A. 21-3109 states that where there is a reasonable doubt as to the defendant's guilt, defendant 'must' be acquitted, it is not reversible error for the trial judge to instruct a jury: 'If you have reasonable doubt as to the truth of any of the claims made by the State, you *should* find the defendant not guilty.' (Emphasis supplied.) The better practice, however, as recognized in the recent amendment to the pattern jury instructions, is to instruct the jury that if there is reasonable doubt, it '*must find the defendant not guilty.*' PIK Crim. 3d 52.02."

*Whitaker* is controlling on this issue.

The judgment is affirmed.