NOT DESIGNATED FOR PUBLICATION

No. 114,650

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EDDIE L. HOLLOMAN, SR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed February 10, 2017. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY and BUSER, JJ.

*Per Curiam*: Eddie L. Holloman, Sr., appeals from his conviction of indecent solicitation of a child. The parties are familiar with the facts leading to this conviction so we need not recount them in full detail.

*Facts*

It suffices to say that Lakendria Holloman's three daughters were at the home of her in-laws, Eddie and Sadie Holloman, while Lakendria was at work. That afternoon, Holloman asked 15-year-old C.S. to join him to play a game of pool in a backyard shed.

1

He told C.S. to come alone. C.S. told her sisters that Holloman's request made her feel weird and gave her an "awkward vibe." The sisters thought C.S. was crazy, so C.S. decided to take along a recording device when she went to the pool room in order to prove to her sisters that she was not crazy.

Holloman told the three sisters that whatever they have been hearing about him was not true and that he was really a nice guy. While alone with C.S. on the porch, Holloman asked C.S. her age and told her that she was his girlfriend. C.S. said she did not know what he was taking about. Holloman again asked C.S. if she was going to join him in the pool room. C.S. said she would, but first turned on the recorder on her phone and hid it under her shirt.

Once in the pool room, Holloman asked C.S. if boys were trying to talk to her. When she said yes, Holloman said, "I don't like that. You're my girl." Holloman then asked, "Do you want to be my girl? Or are you ready for that? Do you know what a girlfriend does?" Holloman then told her to "Give me a little feeling" as he rubbed both hands over his groin. He asked C.S., "Are you ready for this?" He then told C.S. to jump up on him and give him a kiss. C.S. backed up and Holloman responded, "[Y]ou're not ready for that." C.S. responded that she was not. Holloman then told C.S. to think about it and to let him know. C.S. said she would. Holloman also told her not to tell anyone about their conversation. C.S. immediately left crying and joined her sisters. K.L. asked C.S. whether she was okay, and C.S. played the recording for her.

C.S. told her mother about the incident and played the recording for her. Lakendria reported the incident to law enforcement. Officer Edward Johnson listened to the recording and kept C.S.'s phone for further investigation. Detective Kevin Brown interviewed Lakendria and the three girls. C.S. described the incident to Detective Brown, including Holloman's suggestive comments and gestures.

2

Holloman told Detective Brown that C.S. had asked him to be her boyfriend and that he had told C.S. that she couldn't handle that. Holloman said he then went into the pool room where C.S. came uninvited. Holloman then asked her, "So we're girlfriend and boyfriend now, huh?" Holloman stated that he told C.S. that she could not handle it. Holloman denied asking C.S. to touch him or kiss him, but he acknowledged that the conversation was "inappropriate."

The jury convicted Holloman as charged, and this appeal followed.

*Sufficiency of the Evidence*

Holloman's first contention on appeal is that there was insufficient evidence to support his conviction because there was no evidence that he "invited, persuaded, or attempted to persuade C.S. to touch him or to allow [Holloman] to touch her in a lewd manner to satisfy either his or C.S.'s sexual desires."

In considering this issue, we review the evidence in the light favoring the State to determine if a rational factfinder could have found Holloman guilty beyond a reasonable doubt. See *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In doing so, we do not reweigh the evidence or assess the credibility of the witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

As defined in K.S.A. 2015 Supp. 21-5508(a)(1), indecent solicitation of a child requires

> "enticing, commanding, inviting, persuading or attempting to persuade a child 14 or more years of age but less than 16 years of age to:
>> "(1) Commit or to submit to an unlawful sexual act; or

3

"(2) enter any vehicle, building, room or secluded place with intent to commit an unlawful sexual act upon or with the child."

The jury was instructed on the elements of the crime consistent with this statute.

There is evidence in the record to support each of these elements. There is substantial evidence that Holloman invited C.S. to the pool room and told her not to bring her sisters. Holloman told her that he knew boys were trying to talk to her, and he did not like it because she was his girl. Holloman asked C.S. if she wanted to be his girl and if she was "ready for that." Holloman made hand gestures over his genital area and told her to give him "a little feeling." Holloman then invited C.S. to jump on him and give him a kiss. When she did not, he told C.S. to think about it and let him know. He cautioned her not to tell anyone. He later acknowledged to the authorities that the conversation was inappropriate.

The jury heard the recording which corroborates C.S.'s testimony. Though somewhat difficult to hear and understand, the recording is generally consistent with C.S.'s testimony. The testimony was sufficient to establish that Holloman invited and attempted to persuade 15-year-old C.S. to enter the shed with the intent to commit the unlawful sexual act of lewdly fondling or touching Holloman with the intent to arouse or to satisfy his sexual desires. The underlying act of lewd fondling or touching does not need to be completed because the enticement or solicitation of the act completes the offense. See *State v. Garrison*, 252 Kan. 929, 936, 850 P.2d 244 (1993) (indecent solicitation of a child is an inchoate offense in which the underlying act need not be completed).

Holloman points out that his conduct differed significantly from that of the defendants in *State v. Pendelton*, 10 Kan. App. 2d 26, 33, 690 P.2d 959 (1984), and in *State v. Hill*, 271 Kan. 929, 931, 942, 26 P.3d 1267 (2001), *abrogated on other grounds*

4

*by State v. Voyles*, 284 Kan. 239, Syl. ¶ 3, 160 P.3d 794 (2007). In *Pendelton*, the defendant's verbal request left no doubt that the defendant was requesting sexual contact. In *Voyles*, the defendant told the victim to "get it on" after having forced himself on the victim, touched her breasts, and penetrated her vagina. The fact that these cases represent seriously reprehensible misconduct does not vitiate any lesser conduct by a defendant such as Holloman. Viewing the evidence in the light favoring the State, there is ample evidence to support this conviction.

*Cumulative Corroborative Testimony*

Holloman next argues that the court denied him a fair trial by erroneously admitting, over Holloman's objection, cumulative testimony used to corroborate C.S.'s testimony. We apply the abuse of discretion standard in reviewing the district court's ruling on this issue. *State v. Rodriguez*, 295 Kan. 1146, 1156, 289 P.3d 85 (2012).

When a witness' credibility is not questioned or impeached, the witness' testimony is not made more probable by numerous repetitions. Cumulative evidence makes the trial more cumbersome and should generally be rejected. See *State v. Kackley*, 32 Kan. App. 2d 927, 935, 92 P.3d 1128, *rev. denied* 278 Kan. 849 (2004). Thus, a witness' prior statements consistent with the witness' trial testimony are generally not admissible to corroborate the witness' testimony unless the witness has been impeached and then only for purposes of rehabilitation. See *State v. Whitesell*, 270 Kan. 259, 290, 13 P.3d 887 (2000).

But Kansas recognizes an exception to this rule in rape prosecutions wherein testimony corroborating the victim's testimony is permitted. *State v. Washington*, 226 Kan. 768, 770, 602 P.2d 1377 (1979). Our court has extended this exception to permit limited corroborating testimony in child abuse cases. *Kackley*, 32 Kan. App. 2d at 935. Further, *Kackley* does not limit this exception to instances in which corroborating

5

evidence is introduced to rebut the argument that the victim's late reporting of sexual abuse suggests that the abuse never happened.

Holloman claims there was cumulative corroborating testimony from C.S's sister and mother, K.L. and Lakendria, and from Detective Brown. Holloman did not object to the testimony of K.L. and Lakendria as cumulative, so those claims have not been preserved for appeal. See *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016).

With respect to Detective Brown's testimony, Holloman relies on *Massachusetts v. King*, 445 Mass. 217, 243, 834 N.E.2d 1175 (2005) for support. There, the court established a new rule permitting only one corroborating witness to testify regarding the victim's report of events. Here, Holloman contends that the testimony of K.L. and Lakendria, to which no objection was made, nevertheless became the predicate testimony for his cumulative objection to Detective Brown's corroborating testimony.

But K.L.'s and Lakendria's testimony was not focused on C.S.'s report of events. They did not recount the details of C.S.'s encounter with Holloman. C.S.'s generalized references to the events in the shed were simply the basis for K.L. telling their mother and their mother calling the police. Only Detective Brown fully recounted C.S.'s description of her encounter with Holloman. Thus, though this new rule in *King* is not the controlling rule in Kansas, if it were, Detective Brown's testimony would satisfy it. His was the only actual recounting of C.S.'s testimony of what happened in the shed. We find no error in overruling Holloman's objection to Detective Brown's testimony.

*Jury Selection*

Next, Holloman contends the district court abused its discretion when it denied Holloman's challenges for cause during voir dire of prospective jurors Berry, Ross, and Travis.

A prospective juror may be challenged for cause if his or her "state of mind with reference to the case or any of the parties is such that the court determines there is doubt that he can act impartially and without prejudice to the substantial rights of any party." K.S.A. 22-3410(2)(i); see *State v. Heath*, 264 Kan. 557, 587, 957 P.2d 449 (1998). But the failure to excuse a juror for cause does not constitute a ground for reversal unless the defendant shows prejudice. See *State v. Crawford*, 255 Kan. 47, 51, 872 P.2d 293 (1994).

Berry was a police officer in Wichita and familiar with several of the State's witnesses. He said his associations with some of the witnesses "could be" a problem for him serving on the jury, but he stated he would be able to follow the court's instruction to "treat every witness with a blank slate when they come in, and assess their credibility on [his] own, in equal measure."

Ross stated that he was in "complete disagreement" with the charged conduct, which ran contrary to the way he was raised. He initially opined that he could not fairly decide the case on the evidence presented but then stated that although he had a predisposition to some degree, he understood that the defendant was innocent until proven guilty and he would be able to reserve judgment until he had all of the facts and pertinent legal guidance. He concluded, "I think I could be fair."

Travis, a school teacher, became emotional during questioning and stated, "there is a huge spot in my heart for children." She initially stated, "I'll really give it my best job,"

7

but later expressed that her prior experiences may interfere with her ability to be impartial.

The district court overruled Holloman's request to strike these three prospective jurors for cause. While the final expressions of Berry and Ross about their state of mind appears adequate to support the district court's ruling, we find no reasonable basis for not granting a challenge for cause of prospective juror Travis, given her express doubt about her ability to be impartial. Nevertheless, Holloman ultimately removed all three of these prospective jurors through the exercise of three of his eight peremptory challenges.

When challenged jurors are removed by using peremptory challenges, "the question before the court is whether the jury that heard the case was impartial. [Citation omitted.]" *State v. Ackward*, 281 Kan. 2, 28, 128 P.3d 382 (2006). The mere loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury. *Crawford*, 255 Kan. at 51-52. So long as the jury that serves is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the Sixth Amendment to the United States Constitution was violated. 255 Kan. at 52. The use of a peremptory challenge to dismiss a challenged juror effectively cures any error in failing to dismiss a juror for cause, at least absent some showing that the peremptory strike would have been used elsewhere more effectively. *Heath*, 264 Kan. at 588.

Holloman does not identify three other prospective jurors who would have been removed by the use of preemptive challenges but for having to use the challenges to eliminate prospective jurors Berry, Ross, and Travis. Thus, Holloman fails to establish the essential element of prejudice. Prejudice cannot be established through the mere loss of a peremptory challenge because its loss does not constitute a violation of the right to a fair jury. "Peremptory challenges are simply a means to achieve an impartial jury, and the

8

true inquiry is whether the jury that ultimately sits is impartial. [Citation omitted.]" *State v. McCullough*, 293 Kan. 970, 996, 270 P.3d 1142 (2012).

Holloman fails to establish reversible error in the district court's refusal to discharge these prospective jurors.

*Jury Instruction on Reasonable Doubt*

Next, Holloman contends that the district court erred by giving the jury an outdated instruction on reasonable doubt. The court instructed the jury:

> "The State has the burden to prove the defendant Eddie Holloman is guilty. Eddie Holloman is not required to prove he is not guilty. You must presume that Eddie Holloman is not guilty unless you are convinced from the evidence that Eddie Holloman is guilty.
> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find Eddie Holloman not guilty. If you have no reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you should find Eddie Holloman guilty." (Emphasis added.)

The updated version of the jury instruction, PIK Crim. 4th 51.010 substitutes the word "each" for the emphasized word "*any*."

Holloman did not object to this instruction at trial, so we review using the clearly erroneous standard. K.S.A. 2015 Supp. 22-3414(3). Under this standard, if the instruction was not legally or factually appropriate, we consider whether we are firmly convinced that the jury would have returned a different verdict but for the instruction. *State v. Williams*, 295 Kan. 506, Syl. ¶¶ 4, 5, 286 P.3d 195 (2012).

9

Holloman contends that the word "any" instead of "each" in this instruction shifted the burden of proof from the State to Holloman. This and similar contentions have been repeatedly rejected by our Supreme Court in *State v. Solis*, 305 Kan. 55, 69-70, 378 P.3d 532 (2016); *State v. Holt*, 300 Kan. 985, 1006-07, 336 P.3d 312 (2014); *State v. Ortega*, 300 Kan. 761, 779, 335 P.3d 93 (2014); and *State v. Herbel*, 296 Kan. 1101, 1122-24, 299 P.3d 292 (2013). This contention fails.

*Cumulative Errors*

Finally, Holloman claims that the combined effect of the trial errors warrants reversal, even if each error is independently harmless. But here, there are not multiple errors to accumulate. The only error we find was the harmless error of not granting a challenge for cause of prospective juror Travis. Thus, this cumulative error claim also fails. See *State v. Lewis*, 301 Kan. 349, 384, 344 P.3d 928 (2015); *Solis*, 305 Kan. At 70-71.

Affirmed.