IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,069

STATE OF KANSAS,
*Appellee*,

v.

KEITH A. RITZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

In reviewing a district court judge's decision to deny a motion to sever charges, an appellate court follows three steps. Each requires application of a different standard of review. The court first considers whether the governing statute permits joinder. On this issue, the appellate court reviews the judge's factual findings for substantial competent evidence and the judge's legal conclusion on whether one of the statutory conditions has been met de novo. Second, the court determines whether the district court judge properly exercised his or her discretion on joinder or severance; there is no error on this step unless the appellate court discerns an abuse of discretion. Third and finally, if there was an error on the first or second step or both, the appellate court must determine whether the error affected a party's substantial rights. On the record in this case, there was no error in the district court's denial of the defendant's motion to sever two sets of charges against him.

2.

There is no federal constitutional requirement to instruct juries on offenses that are not lesser included crimes of the charged crime under state law. And the inviolate right of

1

jury trial in Section 5 of the Kansas Constitution Bill of Rights is limited to fact issues in criminal cases; it does not demand that a jury be permitted to determine a legal question such as the choice of instructions on lesser degrees of a charged crime.

3.

A judge's use of criminal history that has not been included in a charging document and proved beyond a reasonable doubt to a jury as a basis for a criminal sentence or its enhancement is not prohibited by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed March 3, 2017. Affirmed.

*Heather R. Cessna*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Keith A. Ritz appeals his convictions for multiple counts of fleeing or attempting to elude, two counts of theft, and a single count of first-degree felony murder. Ritz raises three issues in his appeal, alleging error in the district court judge's denial of a defense motion to sever charges, error in the district court judge's failure to instruct the jury on lesser degrees of felony murder, and error in the district court judge's reliance on his criminal history for sentencing.

2

As detailed below, we reject each of Ritz' arguments and affirm his convictions and sentence.

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of December 26, 2012, Officer Bradley Carver of the Wichita Police Department was on patrol when he saw a Corvette that appeared to be speeding. Carver did not get a radar reading of the Corvette's speed because of a Honda that was following the Corvette. Carver followed the Corvette until it turned onto a side street and stopped in front of a house. The Honda stopped behind the Corvette. A passenger got out of the Corvette, ran up to the front door, appeared to unscrew a floodlight on the front of the house, and then ran back to the street and got into the Honda. Carver started to get out of his car. As soon as he did, the "Corvette . . . squealed tires and took off." Carver got back into his car, turned on his siren, and began pursuit. The chase that followed was captured on the dashboard camera in Carver's patrol car, and the video would later be admitted at Ritz' trial.

Carver pursued the Corvette through a residential area at "probably 60 to 65 miles [per] hour." At one point in the chase, the Corvette failed to negotiate a T intersection and jumped a curb into a church parking lot. The Corvette continued out of the parking lot, and Carver followed. At another point, it appeared to Carver that the chase was over because the Corvette had failed to make a right-hand turn and had overcorrected, spun, and went up onto a curb. But the driver of the Corvette backed out and continued. Eventually Carver "noticed the left rear tire of [the Corvette] leave the vehicle . . . and [the driver] lost control . . . spun a complete 180 and struck a light pole" on the corner of an intersection.

3

When the Corvette was stopped, Carver exited his car, drew his weapon, and approached the Corvette. Carver ordered the driver to show his or her hands and acknowledge Carver's presence. Carver got no response. As Carver approached the Corvette, he noticed that it was so damaged that the "driver's seat was not really visible from the driver's side." When Carver went around the front of the car, he found the only occupant "laid across the front seat with his feet still underneath the steering wheel of the vehicle and his head partially out of the sunroof of the Corvette."

The Corvette driver would later be identified as Ritz.

Ritz was charged with two alternative counts of fleeing or attempting to elude an officer, theft, and driving while a habitual violator in connection with the events of December 26.

On the morning of March 5, 2013, Officer Jason Emery of the Wichita Police Department responded to a dispatch to check on a vehicle near the Arkansas River. A second officer, Alex Recio, also responded. When Emery arrived in the area, he spotted a parked full-size GMC pickup matching the description he had been given.

Emery and Recio each pulled behind the pickup. The pickup started rolling forward and traveled a very short distance before pulling into the private drive of a residence. Emery and Recio pulled in behind the pickup and stopped. Recio got out of his car and started to walk toward the pickup. Emery started to do the same but decided to stay in his car. As Recio approached, the pickup was backed out of the drive into the street. It then started to roll forward and accelerated away. Emery activated his lights and sirens and gave chase.

4

Initially, the pickup was driving approximately 40 miles per hour through a 30-miles-per-hour residential area. It continued gaining speed and drove through several stop signs and stoplights, making it difficult for Emery to keep up. Emery nevertheless continued his pursuit. When he reached Harry Street he saw "debris, like a big smoke cloud and debris flying in the air" and realized there had been a collision of the pickup he had been chasing and another car.

Emery would later testify at Ritz' trial that the entire chase "[c]ouldn't have been more than probably a minute, minute and a half." At no time during the chase had Emery turned off his lights and siren. Data from recorders in both vehicles involved in the collision would later be admitted into evidence. It showed that the pickup reached a maximum speed of 77 miles per hour approximately 2 seconds before the collision. At about the same time, the pickup's throttle dropped to 0 percent and the pickup brake lights came on, which indicated the driver had depressed the brake pedal. The last recorded speed was 70 miles per hour, approximately 1 second before the collision.

The driver of the pickup would later be identified as Ritz.

When Emery stopped, he could see that the driver of a second vehicle involved in the crash was slumped over and not moving. When Recio, who had also pursued the pickup, arrived at the scene, he focused on the other driver while Emery focused on Ritz. The other driver, Venancio Perez-Najera, was unconscious; and a third officer could not find his pulse. Perez-Najera was ultimately pronounced dead at the scene.

Ritz was charged with first-degree felony murder predicated on fleeing or attempting to elude an officer, two alternative counts of fleeing or attempting to elude an officer, theft, and driving while a habitual violator in connection with the events of March 5.

All of Ritz' charges were filed in a single information, and Ritz moved before trial to sever the crimes by date. After briefing and oral argument by both sides, the district judge ruled from the bench that the two sets of crimes were of the same or similar character under K.S.A. 22-3202, making their joinder appropriate.

The district judge began his analysis of the motion by noting the similarity of the charges. In both cases, Ritz had been charged with reckless fleeing or eluding, driving while a habitual violator, and felony theft. The judge acknowledged that the second case also resulted in a felony-murder charge absent from the first incident and that the thefts were factually distinct. In one set of charges, the State alleged that Ritz had stolen the vehicle in which he fled, whereas in the other the State alleged that Ritz obtained the vehicle from a third party, knowing it to be stolen.

The district judge next focused on whether the charged crimes were of the same general character requiring the same mode of trial, the same kind of evidence, and the same kind of punishment. He noted that the mode of trial for each set of charges was jury trial and that the potential punishment for each charge was incarceration. The judge also noted that the same type of evidence would be needed because both sets of charges would require the testimony of the officers who had participated in the chase.

The district judge also discussed the factual similarities of the two cases. The crimes were fewer than 75 days apart. In both cases, Ritz' flight from police took place in residential neighborhoods within the city limits and ended with an accident involving the car Ritz was driving. The judge acknowledged that the two chases happened at different times of day and that only the second accident resulted in a death. The district judge also compared Ritz' statements to police after his two arrests. After the first chase, Ritz told investigators, "I'm a fucking idiot. I just fucked up my life. I'm such an idiot. I can't

6

believe I did this. I'm sorry." The judge summarized Ritz' statements: He "admitted to stealing the car, admit[ted to] taking off when the police got right behind him." The judge also summarized Ritz' statements after the second chase: Ritz told investigators that "two cops pulled up on him, he freaked out, punched the gas, . . . was going fast and he should have stopped."

Finally, the judge noted that the State's argument was that Ritz' motive for fleeing or attempting to elude in each instance was his knowledge that he was driving a stolen vehicle.

All of the charges—with the exception of the two misdemeanors for driving while a habitual violator, which were the subject of a plea agreement—were tried to a jury.

At trial, Detective Michael Amy testified about his interview of Ritz after the March 5 chase. Ritz had told Amy that when police pulled behind him "that he had freaked out and backed out of the driveway and punched the gas." According to Amy, Ritz stated that "he knew he was supposed to stop." Ritz told Amy that he tried to stop, but "things were flying around in the truck or fell off." He "kept saying it was either—he thought it was a—a pop bottle or a water bottle or something of that nature" that ended up underneath the brake pedal and prevented Ritz from using the brakes. Amy testified that the only bottle found in the pickup by investigators was an ibuprofen bottle. Based on testing conducted by investigators, it was not possible for that bottle to jam under the brake pedal. Ritz also admitted to Amy that he had stolen the Corvette he was driving on December 26. Ritz acknowledged that the GMC pickup he was driving on March 5 may have been stolen, because the friend who had "asked [Ritz] to move [the GMC] truck . . . [and] go and park it by the river . . . was into stealing cars."

7

At the conclusion of the trial, the jury found Ritz guilty on all of the charges. For the December 26 crimes, Ritz was convicted of two alternative counts of fleeing or attempting to elude a police officer and theft. For the March 5 crimes, Ritz was convicted of first-degree felony murder, two alternative counts of fleeing or attempting to elude a police officer, and theft.

Ritz received a life sentence for the felony-murder conviction; his sentences for the other convictions—the longest of which was 7 months—were ordered to run concurrently with each other and with the life sentence.

## SEVERANCE OF CHARGES

Ritz' first issue on appeal is whether the district judge erred when he denied the motion to sever. When reviewing such decisions, we follow three steps. Each requires us to apply a different standard of review.

> "First, we consider whether K.S.A. 22-3203 permitted joinder. Under that statute, multiple complaints against a defendant can be tried together if the State could have brought the charges in a single complaint. K.S.A. 22-3202(1) spells out the three conditions permitting the joining of multiple crimes in a single complaint. Whether one of the conditions is satisfied is a fact-specific inquiry, and we review the district court's factual findings for substantial competent evidence and the legal conclusion that one of the conditions is met de novo. See *State v. Gaither*, 283 Kan. 671, 684-85, 156 P.3d 602 (2007).

> "Second, because K.S.A. 22-3202(1) provides that charges 'may' be joined, a district court retains discretion to deny a joinder request even if a statutory condition is met. We review this decision for an abuse of discretion. See *Gaither*, 283 Kan. at 685.

"Finally, if an error occurred in the preceding steps, we determine whether the error resulted in prejudice, *i.e.*, whether the error affected a party's substantial rights. K.S.A. 2012 Supp. 60-261." *State v. Hurd*, 298 Kan. 555, 561, 316 P.3d 696 (2013).

K.S.A. 22-3202(1) allows two or more crimes to be charged in the same complaint if: (1) the charges are of "the same or similar character"; (2) the charges are part of the "same act or transaction"; or (3) the charges result from "two or more acts or transactions connected together or constituting parts of a common scheme or plan."

In this case, as mentioned, the district judge relied on the two sets of crimes being "the same or similar character." In his brief, Ritz does not appear to challenge the sufficiency of the evidence supporting any of the factual findings the district judge made; rather, he argues that those facts did not support the judge's legal conclusion.

We have previously articulated a general test for determining when joinder is appropriate:

"When all of the offenses are of the same general character, require the same mode of trial and the same kind of evidence, and occur in the same jurisdiction, the defendant may be tried upon several counts of one information or if separate informations have been filed they may be consolidated for trial at one and the same trial." *State v. Crawford*, 255 Kan. 47, 53, 872 P.2d 293 (1994) (citing *State v. Ralls*, 213 Kan. 249, 256-57, 515 P.2d 1205 [1973]).

Later, in *State v. Barksdale*, 266 Kan. 498, 973 P.2d 165 (1999), this court recited this test:

"'So far as the joinder of separate offenses in the same information is concerned, the test is: Are the charges of the same general nature and will the joinder deprive the defendant

9

of an advantage in the trial, or are they incongruous and repugnant in character and will they operate to deprive the defendant of some legal advantage?'" 266 Kan. at 507.

The *Barksdale* court also warned "against relying solely on generalities when considering the propriety of joinder." 266 Kan. at 508.

> "'That offenses must be of the same general character is not always a sound test of joinder. In this instance the two crimes charged were of the same general character, in that they both involved force and violence to the person. That, however, would not necessarily be sufficient. To illustrate:  As the culmination of a long-standing quarrel about a line fence, a farmer kills his neighbor. He goes to town, and the same afternoon, while in an excited frame of mind, he becomes involved in an altercation about a business matter, and makes an assault with some kind of a deadly weapon with intent to kill. While the offenses are of the same general character, there should be separate informations and separate trials. The only reason this is so is, there would inevitably be some jumbling of the two cases at the trial, which would tend to prevent that concentrated consideration of each case which is indispensable in matters of such gravity.'" 266 Kan. at 508 (quoting *State v. Thompson*, 139 Kan. 59, 61-62, 29 P.2d 1101 [1934]).

More recently, in *State v. Smith-Parker*, 301 Kan. 132, 340 P.3d 485 (2014), we addressed consolidation of two cases for a single trial and summarized our caselaw analyzing the "same or similar character" condition for permitting joinder.

> "On the first statutory condition, crimes of the same or similar character, we note that earlier Kansas cases that have held consolidation or joinder to be appropriate have generally had multiple commonalities, not merely the same classification of one of the crimes charged. See *State v. Carr*, 300 Kan. 1, 101-04, 331 P.3d 544 (2014) (victims identified defendants; aspects of modus operandi consistent between crimes); *State v. Cruz*, 297 Kan. 1048, 1055, 307 P.3d 199 (2013) (both victims leaving nightclub at closing time; both accosted before reaching vehicle; both had little warning before shot repeatedly; same gun used; defendant identified in both cases; both cases charged first-degree murder, criminal possession of firearm); *State v. Gaither*, 283 Kan. 671, 687, 156

10

P.3d 602 (2007) (both victims drug dealers; defendant on quest for drugs during both; both victims shot with 9 mm handgun; both occurred in private dwellings; 5-day time span); *State v. Barksdale*, 266 Kan. 498, 506-10, 973 P.2d 165 (1999) (both crimes murder; victims killed in similar manner; robbery common motive); *State v. Crawford*, 255 Kan. 47, 48, 53-54, 872 P.2d 293 (1994) (both crimes robbery; victims identified defendant; similar modus operandi)." *Smith-Parker*, 301 Kan. at 157-58.

In *Smith-Parker*, we concluded that the "same or similar character" condition was not satisfied.

"Here, although each case involved a single homicide, the homicides lacked many other similarities. The murder of Mack was tied to a burglary, apparently targeted at a large amount of marijuana in his possession. Mack was apparently shot suddenly from across the room while he was seated or in the process of standing up to face at least one of the burglars. In contrast, Letourneau and Smith-Parker, as the district judge found, were so close that they considered themselves brothers, and had spent much of several days in one another's company. Letourneau's death followed an argument between him and Smith-Parker over Letourneau's treatment of Letourneau's girlfriend. Whether that argument provided a motivation for the fatal shooting or the shooting was accidental or a suicide was disputed. On this slim record, we cannot say as a matter of law that the first statutory condition for consolidation or joinder was met." 301 Kan. at 158.

Despite rejecting the "same or similar character" condition, joinder was appropriate in *Smith-Parker* because the factual findings of the district judge supported the third condition precedent listed in the statute—"two or more acts or transactions connected together or constituting parts of a common scheme or plan." See 301 Kan. at 158-60. That condition precedent, of course, is not before us in this case.

Here, based on the district judge's undisputed factual findings and thorough analysis, it is easy for us to conclude that Ritz' two sets of crimes were "of the same or similar character," making joinder permissible under K.S.A. 22-3202. As an initial

11

consideration, the charges stemming from each incident overlap greatly:  Both resulted in charges of fleeing or attempting to elude an officer, theft, and driving while a habitual violator. But, as we held in *Smith-Parker*, overlap in the crimes charged is not enough to establish that crimes are of the same or similar character. See 301 Kan. at 158. There must be other factual similarities between the two sets of crimes. Unlike in *Smith-Parker*, those factual similarities are present here.

The district judge found that in both cases Ritz' flight began when police pulled in behind him while he was driving a stolen car. The judge noted that after the first incident Ritz admitted to "taking off when the police got right behind him." After the second incident Ritz admitted to investigators that "two cops pulled up on him, he freaked out, [and] punched the gas." In both cases, the flight took place in residential neighborhoods within the city limits. And in both cases, the flight ended when Ritz wrecked the vehicle he was driving.

In addition to the factual similarities between the two sets of crimes, the district judge correctly noted that both sets of crimes required the same mode of trial—trial by jury—and could result in the same type of punishment—incarceration.

Taking all of these aspects of the judge's decision into consideration, the two sets of crimes are of the same or similar character, establishing a prerequisite for joinder under K.S.A. 22-3202(1). This satisfies the first step of our analysis. See *State v. Gaither*, 283 Kan. 671, 684-85, 156 P.3d 602 (2007).

The second step requires us to determine whether the district judge abused his discretion. See *Hurd*, 298 Kan. at 561. Ritz does not advance any particularized argument on this step, and we see no basis for one. We thus hold that the judge did not abuse his

12

discretion. Indeed, the district judge's ruling from the bench was complete and comprehensive, demonstrating a careful exercise of discretion.

Because the statutory legal threshold was met in the first step and the judge did not abuse his discretion in the second step, there was no error in the ruling on the motion to sever. We do not need to reach the third step of our analysis, examination for harmlessness or reversibility. See *Hurd*, 298 Kan. at 561.

## LESSER INCLUDED CRIME INSTRUCTIONS

Ritz also argues on appeal that "the purported statutory elimination of his right to instructions on lesser included offenses" in K.S.A. 2016 Supp. 21-5109(b)(1) and K.S.A. 2016 Supp. 21-5402(d) violates federal and state constitutional protections of his right to jury trial.

Identical claims were decided adversely to defendants in two new cases from this court. See *State v. Love*, 305 Kan. __, __ P.3d __, 2017 WL 244772, at *9-13 (No. 112,611, filed January 20, 2017); *State v. Brown*, 305 Kan. __, __ P.3d __, 2017 WL 252449, at *9-10 (No. 111,166, filed January 20, 2017). We see no reason to depart from those holdings here.

Highly summarized, the new cases state that there is no federal constitutional requirement to instruct juries on offenses that are not lesser included crimes of the charged crime under state law. See *Hopkins v. Reeves*, 524 U.S. 88, 90-91, 118 S. Ct. 1895, 141 L. Ed. 2d 76 (1998). And the inviolate right of jury trial in Section 5 of the Kansas Constitution Bill of Rights is limited to fact issues in criminal cases; it does not demand that a jury be permitted to determine a legal question such as the choice of instructions on lesser degrees of a charged crime. See *Love*, 2017 WL 244772, at *12-13.

*APPRENDI*

Ritz' final appellate issue challenges the district judge's use of prior convictions as a basis for Ritz' criminal history score to enhance his sentence without requiring the criminal history to be included in the charging document and proved to a jury beyond a reasonable doubt. Ritz relies on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

Ritz acknowledges that we have previously rejected this argument. See *State v. Ivory,* 273 Kan. 44, 46-48, 41 P.3d 781 (2002). He does not present a new or persuasive argument compelling us to overturn that precedent. See *State v. Williams*, 299 Kan. 911, 941, 329 P.3d 400 (2014). We therefore reject his claim.

CONCLUSION

Defendant Keith A. Ritz was not entitled to have his two sets of charges severed or to have his jury instructed on lesser degrees of felony murder. Further, the district judge was entitled to rely on Ritz' criminal history for sentencing. We affirm the judgment of the district court.